## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAUDIA SAMPEDRO, EVA PEPAJ, GALLIENNE NABILA, IESHA MARIE CRESPO, JANET GUZMAN, JESSICA HINTON a/k/a JESSA HINTON, TIFFANY GRAY a/k/a TIFFANY TOTH, URSULA MAYES, YODIT YEMANE a/k/a JODIE JOE and SARAH STAGE, | : : : : : : : : : | C.A. No. |
| Plaintiffs, | : : | **COMPLAINT** |
| v. | : : : | **(Jury Trial Demanded)** |
| PALMER SOCIAL CLUB d/b/a TRILOGY NIGHT CLUB f/k/a PALMER SOCIAL CLUB and MOHAMED EL-LAISY, | : : : : | |
| Defendants. | : : | |

Plaintiffs CLAUDIA SAMPEDRO, EVA PEPAJ, GALLIENNE NABILA, IESHA MARIE CRESPO, JANET GUZMAN, JESSICA HINTON a/k/a JESSA HINTON, TIFFANY GRAY a/k/a TIFFANY TOTH, URSULA MAYES, YODIT YEMANE a/k/a JODIE JOE and SARAH STAGE, (collectively, "Plaintiffs"), file this Complaint against PALMER SOCIAL CLUB, d/b/a TRILOGY NIGHT CLUB f/k/a PALMER SOCIAL CLUB and MOHAMED EL-LAISY (collectively, "Defendants") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Trilogy Night Club located at 601 Spring Garden St, Philadelphia, Pennsylvania 19123 (**hereinafter referred to as the "Night Club" or "Trilogy"**).

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Right of Privacy; d) Common Law

Right of Publicity; e) Defamation; f) Negligence and Respondeat Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3.　　In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## **JURISDICTION & VENUE**

4.　　 This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.　　This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.　　Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.　　According to publicly available records, Defendant PALMER SOCIAL CLUB, is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 601 Spring Garden St, Philadelphia, Pennsylvania, 19123. Upon information and belief, Palmer Social Club operates TRILOGY NIGHT CLUB, which is located at 601 Spring Garden St, Philadelphia, Pennsylvania 19123.

8.　　According to publicly available records, Defendant MOHAMED EL-LAISY, is an individual operating under the laws of Pennsylvania, who is an Owner and/or CEO of PALMER SOCIAL CLUB. Upon information and belief, MOHAMED EL-LAISY can be located at 601 Spring Garden St, Philadelphia, Pennsylvania 19123.

9.　　Venue is proper in the United States District Court for the Eastern District of Pennsylvania because Defendants' principal place of business is located in Philadelphia, Pennsylvania, (Philadelphia County).

10.　　A significant portion of the alleged causes of action arose and accrued in Philadelphia, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Philadelphia, Pennsylvania.

2

**PARTIES**

*Plaintiffs*

11.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Gallienne Nabila ("Nabila") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Iesha Marie Crespo ("Crespo") is a well-known professional model, and a resident of Miami-Dade County, Florida.

15.     Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Gray") is a well-known professional model, and a resident of Orange County, California.

18.     Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

19.     Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Sarah Stage ("Stage") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

21.     Defendant, Palmer Social Club, is a corporation formed under the laws of the state of Pennsylvania and registered to conduct business in Pennsylvania. During times relevant to this action, Palmer Social Club operated Trilogy Night Club.

22.     According to publicly available records, Mohamed El-Laisy, in their capacity as principal, owner and/or CEO of Palmer Social Club, maintained operational control over Trilogy including all advertising relating thereto.

## FACTUAL ALLEGATIONS

23.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

24.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

25.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

26.     In the case of each Plaintiff, this apparent claim was false.

27.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

28.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

29.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

*Plaintiffs' Individual Backgrounds and Careers*

30.     Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).[1]

31.     That we know of, Sampedro is depicted in the photo in Exhibit "A" to promote Trilogy on its Facebook page. This Image was intentionally altered to make it appear that Sampedro was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

32.     Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, True Detective, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign. She is also a content creator, and has over 1.3 million Instagram followers, and her YouTube channel, shared with her husband, has over 2.28 million subscribers.

---

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

34.    That we know of, Pepaj is depicted in the photo in Exhibit "B" to promote Trilogy on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Pepaj was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

35.    Pepaj has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.    Nabila is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

37.    That we know of, Nabila is depicted in the photo in Exhibit "C" to promote Trilogy on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Nabila was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

38.    Nabila has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.    Crespo is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of Models Latina March 2015 and Shock magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

40.     That we know of, Crespo is depicted in the photo in Exhibit "D" to promote Trilogy on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Crespo was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

41.     Crespo has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

43.     That we know of, Guzman is depicted in the photo in Exhibit "E" to promote Trilogy on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Guzman was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

44.     Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

46.     That we know of, Hinton is depicted in the photo in Exhibit "F" to promote Trilogy on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Hinton was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

47.     Hinton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.    Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368,700 X (formerly known as Twitter) followers.

49.    That we know of, Gray is depicted in the photo in Exhibit "G" to promote Trilogy on its Facebook page. This Image was intentionally altered to make it appear that Gray was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

50.    Gray has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.    Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in Maxim magazine. She is well known as a "suitcase model #5" from the hit game show Deal or No Deal. Mayes has appeared on Minute To Win It, The Tonight Show, and The Jay Leno Show. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, Vogue, Elle, In Style, Cosmopolitan, and Marie Claire, to name a few. Mayes is currently a cover model and a star of the game Juiced 2: Hot Import Nights. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract

Talent Agency.

52.    That we know of, Mayes is depicted in the photo in Exhibit "H" to promote Trilogy on its Instagram page. This Image was intentionally altered to make it appear that Mayes was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

53.    Mayes has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.    Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry

55.    That we know of, Yemane is depicted in the photo in Exhibit "I" to promote Trilogy on its Instagram page. This Image was intentionally altered to make it appear that Joe was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

56.    Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

57.    Stage has worked for brands such as Fredericks of Hollywood, Jafra Cosmetics, Buffalo Jeans, Sky Clothing, and Beach Bunny Swimwear. She has also done commercials for Kia, Budweiser, Samsung, and has appeared in magazines such as Maxim, Shape, and Allure.

Stage is a social media influencer with over 2 million followers on Instagram, over 21 thousand followers on Twitter, 50 thousand views on Snapchat, and over 113,000 likes on Facebook.

58.      That we know of, Stage is depicted in the photo in Exhibit "J" to promote Trilogy on its Facebook page. This Image was intentionally altered to make it appear that Stage was either an employee working at Trilogy, that she endorsed Trilogy, or that she was otherwise associated or affiliated with Trilogy.

59.      Stage has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

60.      Defendants operate (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

61.      Defendants own, operate, and control Trilogy's social media accounts, including its Facebook, Twitter, and Instagram accounts.

62.      Defendants used Trilogy's Facebook, Twitter, and Instagram accounts to promote Trilogy's , and to attract patrons.

63.      Defendants did this for their own commercial and financial benefit.

64.      Defendants have  used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Trilogy, endorsed Trilogy, or was otherwise associated or affiliated with Trilogy.

65.      Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Trilogy to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue,

11

profits, proceeds, and income.

66.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Trilogy, and at no point have any of the Plaintiffs ever endorsed Trilogy or otherwise been affiliated or associated with Trilogy.


67.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

68.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

69.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

70.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

71.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

72.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

73.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Trilogy.

74.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

75.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Trilogy.

76.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

77.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

78.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Trilogy's website, Twitter, Facebook, or Instagram accounts.

79.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**<u>FIRST CAUSE OF ACTION</u>**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

80.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

81.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein

82.     Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment , or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

83.     Thus, this was done in furtherance of Defendants' commercial benefit.

84.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact

demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

85. Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

86. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

87. Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

88. Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

89. Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

90.     Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

91.     As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

92.     Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

93.     Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

94.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

95.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

96.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits

a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

97.     Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market Defendants' businesses, Defendants' establishment, and/or Defendants' establishment events and activities.

98.     Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and activities as described in this Complaint was false and misleading.

99.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

100.     Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants' establishment, as to the general quality of attendees and participants of Defendants' establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant establishment events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

101.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendant establishment events and activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

102.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

103.    Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

104.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

105.    Defendants' wrongful conduct as described herein was willful.

106.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

107.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

108.     The method and manner in which Defendants used the image of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

109.     Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

110.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Right of Privacy)**

111.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

112.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Pennsylvania law.

113.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

114.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their image and likeness on Defendants' website or related social media accounts as part of Defendants' advertising campaign.

115.     At all relevant times, Defendants' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

116.     At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' image and likeness on their website or social media account.

117.     Defendants' website and social media accounts were designed to attract business to the Defendants and generate revenue for Defendants.

118.     Plaintiffs are informed and believes and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently

undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

119.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republished Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

120.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

121.     Upon information and belief, Defendants use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendants.

122.     At no point did any Defendants ever receive permission or consent to use any Plaintiffs' Image on their website or social media account.

123.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote the Defendants.

124.     At no point did Defendants ever compensate Plaintiffs for its use of their image and likeness.

125.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' image and likeness.

## FOURTH CAUSE OF ACTION
### (Common Law Right of Publicity)

126.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

127.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

128.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

129.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Defendants advertising.

130.    Defendants did so without any Plaintiff's consent, written or otherwise.

131.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

132.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

133.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote the Defendants.

134.    At no point did Defendants ever compensate Plaintiffs for its use of their image and likeness.

135.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' image and likeness.

## FIFTH CAUSE OF ACTION
### (Defamation)

136.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

137.    As detailed throughout this Complaint, Defendants have published altered image and likeness of Plaintiffs in order to promote their Defendants to the general public and potential clientele.

138.    Defendants' publication of said image and likeness constitutes a representation that Plaintiffs were either employed by the Defendants, that they endorsed the Defendants, or that they had some affiliation with the Defendants.

139.    None of these representations were true.

140.    In publishing Plaintiffs' altered image and likeness, it was Defendants' intention to create a false impression to the general public that Plaintiffs were entertainers working at the Defendants, or endorsed the Defendants.

141.    Defendants were at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by the Defendants, had no affiliation with the Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

142.    In the alternative, Defendants published the image and likeness of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Defendants, had no affiliation with the Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

143.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

144.    Defendants' publication of Plaintiffs' image and likeness constitutes defamation under Pennsylvania law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as an employee of and/or endorsing Defendants' ESTABLISHMENTs - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence

and friendly intercourse in society.

145.    Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

146.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was an employee of and/or promoting as Defendants, an inference which Defendants' publication of the image and likeness support.

147.    Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Pennsylvania law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to her.

148.    Defendants' publication of Plaintiffs' Image caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

149.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

150.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

151.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

152.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

153.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

154.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

155.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Pennsylvania law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

156.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

157.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>**SEVENTH CAUSE OF ACTION**</u>
**(Conversion)**

158.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

159.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

160.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their image and likeness for their own use and financial gain image and likeness for its own use

and financial gain.

161.    As a result of Defendants' unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

162.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

163.    As set forth in detail above, Defendants published Plaintiffs' image and likeness in order to promote the Defendants to the general public and potential clientele.

164.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either employees working at the Defendants, or endorsed the Defendants.

165.    Defendants' purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

166.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' image and likeness.

167.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Defendants.

168.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their image and likeness, and thus any financial benefit which Defendants received due to said exploitation is unjust.

169.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

170.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

171.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

172.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

173.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their establishment, endorse their establishment, or are otherwise affiliated with their establishment, Defendants have not compensated Plaintiffs.

174.    Plaintiffs are therefore entitled to reasonable compensation for the Defendants' unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)    For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)    For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Trilogy's Night Club;

(c)    For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d)    For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e)    For such other and further relief as the Court may deem just and proper.


                                                    /s/ Gerald B. Baldino, III
                                                    Gerald B. Baldino, III, Esquire
OF COUNSEL:                                         Attorney I.D. No. 326111
John V. Golaszewski, Esquire*                       SACCHETTA & BALDINO
THE CASAS LAW FIRM, PC                              308 E. Second Street
1325 Avenue of the Americas, 28th Floor             Media, PA 19063
New York, NY 10019                                  P: (610) 891-9212
T: 646-872-3178                                     F: (610) 891-7190
F: 855-220-9626                                     gbaldino@sbattorney.com
john@talentrights.law                               *Attorney for Plaintiffs*

Dated: May 6, 2025

*Pro Hac Vice Application Forthcoming*